# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARRIE GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-1338-D |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF THE SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Carrie Green, seeks judicial review of a denial of supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

I.  **Procedural Background**

Ms. Green's amended disability onset date is September 22, 2005. On that date, Ms. Green turned 50 years old. *See* Administrative Record [Doc. #12] (AR) at 15; 336. She originally filed her application for SSI on June 30, 2004, claiming a disability onset date of November 12, 2000. AR 49. The Social Security Administration denied her application initially and on reconsideration. Following a hearing at which Ms. Green appeared without representation, an Administrative Law Judge (ALJ) issued an unfavorable decision. AR at 194-204.

The Appeals Council granted Ms. Green's request for review and remanded the case to the ALJ for a supplemental hearing and further development of the record. AR 205-208. The supplemental hearing, before the same ALJ, was held on May 7, 2008. AR 334-369. Ms. Green was represented by counsel.

The ALJ issued a second unfavorable decision on August 28, 2009. AR 12-22. The Appeals Council denied Ms. Green's request for review, and the decision of the ALJ became the final decision of the Commissioner. This appeal followed.

**II.     The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined that Ms. Green had not engaged in substantial gainful activity since the amended onset date. AR 17. At step two, the ALJ determined that Ms. Green suffers from the following severe impairments: radicular back pain, right and left hip osteoarthritis and left ankle fracture. AR 17. At step three, the ALJ found that Ms. Green's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 18.

The ALJ next determined that Ms. Green retained the residual functional capacity (RFC) to perform sedentary work limited by her ability to only occasionally climb, balance, kneel, stoop, crawl and crouch. AR 18. At the second part of step four, the ALJ found that Ms. Green "has past relevant work as a Certified Nurse's Aid (CNA) and daycare attendant." AR 20. The ALJ determined that Ms. Green cannot perform either of these jobs because the

exertional requirements exceed the exertional limits for sedentary work. AR 20. According to the ALJ, however, Ms. Green "acquired work skills from past relevant work" such as "record keeping, patient care, charting, taking vital signs, and working with children." AR 20.

At step five, the ALJ found that with skills acquired from past relevant work, Ms. Green can perform other jobs in the national economy:

> Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy.

AR 21. The ALJ concluded that Ms. Green can perform the semi-skilled jobs of blood bank order control clerk, dietary clerk, and admitting clerk, and that each of these jobs exist in sufficient numbers in the national economy. AR 21.

### III. **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court

"meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## IV. Issues Raised on Appeal

Ms. Green raises two issues on appeal. First, she contends that her past jobs do not constitute "past relevant work" under the regulations because her average monthly earnings did not rise to the level of "substantial gainful activity." Ms. Green further contends that because she has no "past relevant work," it follows that she did not acquire skills that could be transferred to other work. Second, Ms. Green contends that even if her average monthly earnings from her past job at Special Care, Inc., was sufficient to constitute "substantial gainful activity," the ALJ nonetheless erred in determining that the job, as it was actually performed, constituted skilled or semi-skilled work from which transferable skills could be acquired.

## V. Analysis

### A. The Appeals Council's Previous Remand Order

The Appeals Council vacated and remanded the ALJ's November 21, 2006, decision, because the ALJ had not consistently expressed Ms. Green's RFC "in specific terms with appropriate references to pertinent evidence of record." AR 206. Additionally, the ALJ had not clearly established that Ms. Green's earnings from work activity as a "day care worker" and "attendant children's instructor" were sufficient to constitute substantial gainful activity. As a result the Appeals Council found it unclear as to "whether the claimant has any past relevant work, and whether her medical-vocational profile was properly determined." AR 207. Finally, the Appeals Council found error in the application of the Medical-Vocational Guidelines because Ms. Green turned fifty-years-old before the ALJ issued her first unfavorable decision on November 21, 2006. As a framework for her decision, the ALJ had used only the rule in the Medical-Vocational Guidelines applying to a "younger individual." But from the time Ms. Green turned fifty, the ALJ should have used the rule applicable to an "individual closely approaching advanced age." *See* Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, Appendix 2.

In the decision now under review, the ALJ stated consistently throughout that Ms. Green's RFC limits her to sedentary work with some nonexertional, postural restrictions. But the ALJ's conclusion that Ms. Green acquired transferable skills from "past relevant work" is not based on substantial evidence in the record. As discussed in further detail below, the record does not support the ALJ's conclusion that Ms. Green has "past relevant work"

performed at the level of "substantial gainful activity," such that she could have acquired "transferable skills." Whether Ms. Green has transferable skills is dispositive in this case. The Medical-Vocational Guidelines direct a finding of "Disabled" in the case of a claimant limited to sedentary work who is of Ms. Green's age and has Ms. Green's educational and vocational profiles.

### B. The Medical-Vocational Guidelines

At step five of the sequential evaluation, an ALJ must determine whether an individual who cannot perform her past relevant work can perform other work available in the national economy. The ALJ makes this determination by considering the claimant's RFC, her age, her education and her work experience. The Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2, were added to the regulations to "increase the consistency and promote the uniformity with which disability determinations are made at all levels of adjudication[.]" SSR 83-10, 1983 WL 31251 at *1. Commonly referred to as "the grids," the Medical-Vocational Guidelines contain specific numbered rules in a table format for adjudicators to use in evaluating the medical-vocational profiles of claimants.

> Each numbered rule in the appendix resolves the issue of capability to do other work by addressing specific combinations of factors (i.e., RFC, age, education, and work experience) that will determine capability to do work other than that previously performed. The criteria for each factor contained within a rule are defined in the regulations. Resolution of the issue of capability to do other work is indicated in the "Decision" column (i.e. "Disabled or "Not disabled") for the particular rule.

SSR 83-10. If each factor of a claimant's medical-vocational profile coincides with the criteria for the corresponding rule, that rule applies and directs a decision of "Disabled" or

6

"Not disabled." Where one or more of the factors are not met, the rules and text are used as guidance for decision-making. *Id.*

In this case, Ms. Green was 50 years old on the amended onset date. Under the grids, a claimant who is 50-54 years old is classified as a person "closely approaching advanced age." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(g). The ALJ determined that Ms. Green would be limited to sedentary work with some additional nonexertional postural limitations. AR 18. The grid rules relevant to a 50-year-old claimant limited to sedentary work are rules 201.09–201.16. Having determined that Ms. Green has transferrable skills, the ALJ applied ruled 201.15[1] as a "framework" for determining whether Ms. Green is disabled. AR 21. If Ms. Green does not have transferrable skills, however, rule 201.12 would be the applicable rule and would direct a finding of "Disabled."[2]

### C. <u>Transferability of Skills Acquired from Previous Work Experience</u>

The regulations define "transferable skills" as skills a claimant has acquired from work experience that "can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 416.968(d)(1). The regulations define the three skill levels as follows:

---

[1] Rule 201.15 directs a decision of "Not disabled" if a claimant limited to sedentary work is 50-54 years old, has an educational profile that does not provide for direct entry into skilled work, but does have transferable skills acquired from previous skilled or semi-skilled work. 20 C.F.R. Pt. 404, Subpt. P, App.2, at § 201.15.

[2] Rule 201.12 directs a decision of "Disabled" if a claimant limited to sedentary work is 50-54 years old, has an educational profile that does not provide for direct entry into skilled work, and has only unskilled work experience or none at all. 20 C.F.R. Pt. 404, Subpt. P, App.2, at § 201.12.

7

(a) Unskilled work. Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

(b) Semi-skilled work. Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

(c) Skilled work. Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity.

20 C.F.R. § 416.968. Ms. Green contends that she did not acquire skills from any previous job she has had because none of these jobs can be classified as substantial gainful activity and because the functions she performed were actually unskilled.

1. **Effect of SGA on Acquisition of Transferrable Skills**

The regulations define "work experience" as "skills and abilities you have acquired through work you have done[.]" 20 C.F.R. § 416.965(a). Because gradual changes occur in

8

most jobs, the Agency considers only work done within the previous fifteen years, commonly referred to as "past relevant work," as "work experience." *Id.* Moreover, the Agency considers only "work experience" performed within the previous fifteen years from which a claimant received sufficient earnings to constitute "substantial gainful activity" (SGA). *Id.* The Agency does not consider work that a claimant has performed "only off-and-on or for brief periods of time during the 15-year period." *Id.*

Whether a claimant has engaged in past relevant work at the level of "substantial gainful activity" is determined by the average monthly earnings the claimant has derived from work activity. *See* 20 C.F.R. § 416.974(a) and (b). Whether a claimant's work was performed at the level of substantial gainful activity is determined by comparing a claimant's average monthly earnings with the amounts listed in Table 1 for years through December 2000, or with the results of calculations derived from the subsequent earnings guidelines. *See* 20 C.F.R. § 416.974(b)(1)-(2). Pursuant to SSR 85-5C, a decision maker should "average the wages earned by the applicant over the time employed to determine whether during that time the applicant was capable of substantial gainful activity." *Id.*, 1985 WL 56864 at *3.

The correct amounts of average monthly earnings which constitute substantial gainful activity for the years relevant to this case are listed in Plaintiff's Opening Brief (Doc. #14) at 4-5. In 2000, the minimum average monthly earnings constituting SGA was $700, and for 2001, it was $740. Ms. Green's wage records were provided by the Agency. *See* AR 51-53.

Additionally, Ms. Green submitted a Work History Report detailing jobs, type of business, and the dates worked.³ AR 67-74.

In her first unfavorable decision, the ALJ determined that Ms. Green had not engaged in substantial gainful activity since November 12, 2000. AR 199.⁴ At the second hearing, Ms. Green's counsel alerted the ALJ to the issues now before this Court, first raised by the Appeals Council. AR 364-367. Ms. Green's counsel also submitted a post-hearing brief addressing these issues to the ALJ. AR 266. The ALJ did not address the issues raised by Ms. Green's counsel during the second hearing. In assessing Ms. Green's credibility, however, the ALJ stated:

> In terms of the claimant's alleged ability to work, the claimant indicated she has not worked since 2001 at Special Care. However, the claimant's medical evidence of record reported that she had a loss of activity and ½ day of work in October 2006. (*Id.* at 10).⁵ This information is inconsistent with that provided by the claimant and detracts from her credibility.⁶

AR 19. The ALJ cites a medical record dated October 18, 2006, which is indeed included, although mistakenly, in the administrative record. The medical record in question references a completely different patient – not Ms. Green. The earnings record from the Agency shows

---

³As discussed in further detail below, it appears that Ms. Green may have been mistaken as to some of the actual dates of her employment.

⁴During the first hearing, the VE identified only unskilled jobs which Ms. Green could allegedly perform. AR 329-331.

⁵The ALJ was referring to page 10 of Exhibit 13F. AR 284.

⁶Ms. Green does not directly challenge the ALJ's credibility determination, and this recommendation for remand is not based on this error. Nevertheless, the ALJ should reconsider Ms. Green's credibility on remand.

no earnings in 2006. It is not clear whether the ALJ's mistaken notion that Ms. Green had worked at Special Care in 2006 was the basis of the ALJ's implicit conclusion that Ms. Green had received earnings constituting SGA from her work at Special Care.

The Commissioner contends that the ALJ's decision should be affirmed because Ms. Green acquired skills from semi-skilled work she performed in 2001 at levels constituting substantial gainful activity. Therefore, according to the Commissioner, the ALJ was correct in determining that Ms. Green could do the semi-skilled work identified by the VE which the ALJ adopted in her decision.

The earnings records submitted by the Agency show Ms. Green's earnings never constituted SGA before 2001, and perhaps not in 2001. The earnings records show that Ms. Green worked at Special Care both in 2000 and 2001. Ms. Green's yearly earnings from Special Care in 2000 was $2,620.48 which represented four months of work, according to the Work History Report. Her average monthly earnings in 2000 did not constitute SGA. In 2001, Ms. Green's yearly earnings were $8,383.18. AR 52. The record is unclear as to just how many months Ms. Green worked in 2001. If the Work History Report for 2001 is accurate, then Ms. Green's average monthly earnings for the five months she allegedly worked in 2001 more than doubled – from $655.12 per month in 2000 to $1,676.64 per month in 2001. Such an increase seems unlikely, given her wage history and the duties she performed at Special Care. A document from Special Care submitted by Ms. Green's counsel, however, states that "Carrie M. Green was employed with Special Care from 2000-2001." AR 238. Ms. Green argues this document indicates that she worked twelve months

11

in 2001 which would make her average monthly earnings for that year $698.60, only slightly more than her average monthly earnings in 2000, and less than the amount of earnings that would constitute SGA.

In any case, the Commissioner's post-hoc explanation, which attempts to supply a possible basis for the ALJ's findings, is unavailing. *See Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (courts cannot engage in post hoc efforts to salvage an ALJ's decision). On remand, the Commissioner should establish whether Ms. Green engaged in substantial gainful activity before concluding that she acquired transferrable skills from past employment.

### 2. Skills Gained from Past Work

Ms. Green contends that even if her average monthly earnings in 2001 constituted SGA, her previous work experience was actually performed at the unskilled level. Work performed at the unskilled level does not equip a claimant with transferable skills. 20 C.F.R. § 416.968(a). The Commissioner contends that Ms. Green received training as a Certified Nurse Assistant, (CNA) and that she acquired transferrable skills from her work activity at Special Care.

At the first hearing, Ms. Green testified that she had graduated from high school and had attended two years of college from which she obtained no degree or diploma. AR 311. At the second hearing, Ms. Green testified she had "nursing training." AR 338. The ALJ asked, "As a CNA?" to which Ms. Green answered, "Uh-huh." AR 339. There is no evidence in the record that Ms. Green actually was a Certified Nurse's Aid or when she

might have completed such training. A claimant of Ms. Green's age who can no longer perform vocationally relevant past work and has no transferable skills will ordinarily be found to be "Disabled," unless the individual has "*recently* completed education which provides for direct entry into sedentary work." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(g) (emphasis added). The ALJ's use of Rule 201.15 as a framework for her step five determination implies that the ALJ had concluded that Ms. Green did not have education recent enough to provide for direct entry into skilled work, as that rule describes a person who has a high school education or more that "does not provide direct entry into skilled work."

Ms. Green testified that at Special Care, she "took care of little children" who were "handicapped" by feeding them, keeping them clean and watching them. AR 342. Although she characterized these duties as "[n]urse care duties, assistant" and agreed with the ALJ's conclusion that she was a "nurse's aide," AR 340, the job title Ms. Green adopted from the ALJ does not prove she is trained as a CNA. Moreover, the job duties Ms. Green described do not appear to have prepared Ms. Green with the skills necessary to perform the sedentary jobs identified by the VE.[7] Whether skills can be transferred from past work "depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 416.968. The jobs identified by the VE, for the most part semi-skilled clerical positions, do not have occupationally significant work activities similar to the work activities

---

[7]The VE testified that a CNA would have acquired the skills of "record keeping, charting, taking vitals, patient care, working with children." AR 361.

Ms. Green was performing at Special Care. On remand, the Commissioner should obtain information sufficient to clarify Ms. Green's education and training as well as information clarifying her work activities at Special Care.[8]

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. § 636 and Fed.R.Civ.P.72. Any such objections should be filed with the Clerk of the District Court by September  13th , 2010. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

---

[8] These steps will be necessary only if the Commissioner determines that Ms. Green's average monthly earnings from her work activity at Special Care constituted SGA.

ENTERED this  23rd  day of August, 2010.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE